UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARISSA SANCHEZ,

    Plaintiff,

  v.

WALMART INC.,

    Defendant.

No. 23 CV 1297

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Defendant Walmart, Inc. manufactures and sells frozen seafood products that are labeled as sustainably sourced. Plaintiff Marissa Sanchez purchased some of these products at a Walmart store and alleges that Walmart's "sustainable" message is deceptive. She seeks to represent a class of consumers and brings claims against Walmart for violations of the Illinois Consumer Fraud Act and eight other state consumer protection statutes, the Uniform Deceptive Trade Practices Act, and for unjust enrichment. Walmart moves to dismiss under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim. For the reasons discussed below, the motion to dismiss for lack of standing is denied in part and granted in part. The motion to dismiss for failure to state a claim is denied in part and granted in part.

## I. Legal Standards

A defendant may challenge a plaintiff's standing to bring a claim in federal court by moving to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th

Cir. 2021). As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing standing. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Because Walmart makes a facial challenge to Sanchez's standing, I accept all well-pleaded allegations as true and draw all reasonable inferences in plaintiff's favor. *See id.*

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

A plaintiff alleging fraud or deceptive practices under the Illinois Consumer Fraud Act must meet the heightened pleading standard of Rule 9(b). *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Under Rule 9(b), a plaintiff "must plead with particularity the circumstances constituting fraud" and identify "the who, what, when, where, and how" of the alleged fraud. *Id.*

## II.  Background

### A.  Facts Considered

Walmart requests judicial notice of fifteen exhibits attached in support of its motion to dismiss. [35].[1] On a 12(b)(6) motion, I may only consider allegations in the complaint, documents attached to the complaint, documents that are both referred to in the complaint and central to its claims, and information that is subject to proper judicial notice. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (citation omitted).

Exhibits 1–3 are images of the three products that Sanchez bought from a Walmart store: Pink Salmon Fillets, [35-1], Frozen Pacific Cod, [35-2], and Breaded Fish Sticks, [35-3]. Exhibits 1 and 2 provide front and back label images of the Pink Salmon Fillets and Frozen Pacific Cod in an enlarged format. Because the products are referred to in the amended complaint and the labels are central to plaintiff's claims, I take judicial notice of them. Exhibit 3 provides front and back label images of the Breaded Fish Sticks, but the front-label image provided by the plaintiff in the amended complaint contains the text "Sustainably Sourced – 100% – Sustainability"

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiff's amended complaint, [26], and any exhibits subject to judicial notice.

that is not visible on defendant's front-label image of the same product. *Compare* [26] ¶ 34 *and* [35-3] at 2. I accept plaintiff's images of the Breaded Fish Sticks packaging as true and decline to consider Exhibit 3.

Exhibits 4–9 are pages taken from the Marine Stewardship Council's website.[2] Plaintiff objects to the admission of Exhibit 4 ("What is the MSC") as containing no hyperlink or indicia of authenticity. [39] at 10. She also objects to any exhibits that are not quoted within her amended complaint. As discussed below, the specific details of MSC's certification process are beyond the scope of the pending motion. I rely on the allegations pertaining to the MSC that plaintiff states in the amended complaint and look no further. I decline to take judicial notice of Exhibits 4, 6, 7, and 8.

Exhibit 10 is a webpage of Walmart's profile on a third-party website, the Ocean Disclosure Project, which provides information about a company's seafood sourcing practices. [35-10]. While it is cited in plaintiff's amended complaint, *see* [26] ¶ 35 n.39, it is referenced in a limited way to support her assertion that Walmart sources products from fisheries that use certain fishing methods. The website page is otherwise not central to her amended complaint, and incorporation-by-reference of the webpage is not warranted. I decline to consider Exhibit 10.

Exhibits 11–15 are pages from Walmart's website. Exhibit 11 includes Walmart's "Price Match" and "Seafood" policies. [35-11]. Defendant provides a link to its Price Match Policy (https://corporate.walmart.com/policies#price-match-policy)

---

[2] Exhibit 5, [35-5], is a duplicate of Exhibit 8, [35-8]. Defendant withdraws its request for judicial notice of Exhibit 5. [40] at 6 n.1.

but refers to Exhibit 11 as reflecting its Seafood Policy in its brief. *Compare* [35-11] at 49–53 *and* [40] at 9. While plaintiff cites to the Seafood Policy in her amended complaint multiple times, *see* [26] ¶¶ 32, 82, 99, the link provided by defendant includes all of Walmart's policies. I rely on the allegations that plaintiff includes in her amended complaint about Walmart's Seafood Policy but look no further. Walmart's "Price Match Policy" relates to its factual argument about plaintiff's damages and is not subject to the incorporation-by-reference doctrine. Walmart's request for judicial notice of Exhibit 11 is denied. Exhibit 12 is Walmart's "Sustainability" policy, which is the webpage linked on the back label of the relevant products.[3] [35-12]. Because it is a part of the product packaging and relevant information that a consumer receives, it is central to plaintiff's claims. I take judicial notice of Exhibit 12. Exhibits 13 ("Product Supply Chain Sustainability") and 14 ("Regulation of Natural Resources") are subpages of Walmart's Environmental, Social, Governance webpage. Portions are cited in the amended complaint, *see, e.g.*, [26] ¶ 4 nn.5–6, and defendant asserts that plaintiff misquotes and mischaracterizes the policy statements. Defendant also acknowledges that they are irrelevant in any event because plaintiff does not allege that they informed her purchase of the products. [40] at 9. Any factual disputes about the contents of the website at this stage are resolved in favor of plaintiff. I deny defendant's request for judicial notice

---

[3] The product images direct customers to the webpage: walmartstores.com/sustainability. [26] ¶ 35. This webpage does not exist (or no longer exists). Defendant says the webpage linked at the back of its products is: https://corporate.walmart.com/purpose/sustainability. [40] at 10.

of these exhibits. Exhibit 15 is Walmart's online Terms of Use, which defendant offers for the class-waiver and arbitration provisions that some class members' claims may be subject to. Incorporation-by-reference is not a procedural tool for a defendant to introduce extrinsic evidence related to its defense in a case. I decline to consider Exhibit 15.

### B. Walmart's Products

Defendant Walmart is the world's largest seller of seafood—it manufactures, markets, and sells frozen seafood products in stores under its "Great Value" and "Sam's Choice" store brands.[4] [26] ¶¶ 1–2, 31. Plaintiff Marissa Sanchez is a Chicago resident who purchased three Great Value brand seafood products from a Walmart store: Pink Salmon Fillets, Fish Fillets, and Breaded Fish Sticks. [26] ¶ 21. The front labels of all three products include a "Blue Tick" certification from the Marine Stewardship Council accompanied with the text, "Certified Sustainable Seafood MSC" and a URL to the council's website. [26] ¶ 33 n.34. The front label of the Breaded Fish Sticks product contains the text in a circular arrangement, "Sustainably Sourced – 100% – Sustainability" on the upper right corner, placed separately from the Blue Tick:

---

[4] Plaintiff brings claims based on eleven of defendant's products across two of its store brands. The Great Value products include: Pink Salmon Fillets, Fish Fillets, Fish Sticks, Wild Caught Skinless Haddock Fillets, and Pacific Cod Skinless Fillets. [26] ¶ 1 n.1. The Sam's Choice products include: Alaska Cod Loins, North Atlantic Cold Water Lobsters, North Atlantic Cold Water Lobster Tails with Butter, Snow Crab Legs, Sea Scallops, Wild Alaskan Sockeye Salmon. [26] ¶ 1 n.1.

 



"Sustainably Sourced – 100% – Sustainability." [26] ¶ 33 nn.34, 36.

The back labels contain the text (in all caps and boldface): "Committed to sourcing sustainable seafood. To see our full seafood sustainability commitment visit: walmartstores.com/sustainability." [26] ¶ 34 n.35. Underneath and to the right of the text is the MSC Blue Tick accompanied by the text, "This product comes from a fishery that has been independently certified to the MSC's standard for a well-managed and sustainable fishery":

7




[26] ¶ 34 n.35.

The Marine Stewardship Council is a third-party organization that provides certification for sustainable, wild-caught seafood. [26] ¶ 7. Fisheries must comply with MSC's fishery standards in order to receive certification.[5] [26] ¶¶ 116–17. The MSC defines sustainable seafood as "seafood that comes from fisheries that catch fish in ways that ensure the long-term health of a stock or species and the wellbeing of the ocean." [26] ¶ 116. Companies like Walmart pay a fee to use MSC's Blue Tick certification label. [26] ¶¶ 2, 7, 112. Walmart announced its partnership with the Marine Stewardship Council in 2006 as a part of its "continued commitment to

---

[5] MSC's Fishery Standards require: (1) "Fishing must be at a level that ensures it can continue indefinitely and the fish population can remain productive and healthy." (2) "Fishing activity must be managed carefully so that other species and habitats within the ecosystem remain healthy." (3) "[F]isheries must comply with relevant laws and be able to adapt to changing environmental circumstances." [26] ¶ 117.

offering sustainable products at affordable prices to [Walmart] customers." [26] ¶ 77. Plaintiff asserts that Walmart knew or should have known that MSC-certified fisheries engage in unsustainable fishing practices. [26] ¶¶ 104–111, 113–14.

In addition to the representations made on the product packaging, Sanchez points to a "multi-channel marketing campaign" that conveys Walmart's "Sustainability Promise." [26] ¶ 4. The "multi-channel marketing campaign" includes statements made by Walmart's executives, in-store and in-club signage, authorized retailer websites, press tours, interviews, and press releases. [26] ¶¶ 4–6, 23–24, 29–30, 67. For example, Walmart's Chief Sustainability Officer spoke in an interview about the company's sustainability efforts: "At Walmart we invest in sustainability because our customers trust us not only to bring them affordable products anywhere, anytime, anyplace, but they expect us to do so in a way that is good for the environment." [26] ¶ 29. Walmart's Seafood Policy states: "We serve hundreds of millions of customers every year, and we advocate for them among suppliers to provide more sustainably produced products." [26] ¶ 32. To meet the needs of its customers, Walmart "work[s] with partners all along the supply chain to improve the sustainability of products." [26] ¶ 32.

Sanchez alleges that Walmart's sustainability representations are deceptive and misleading because the fisheries supplying Walmart with seafood use unsustainable practices. [26] ¶ 34. According to plaintiff, Walmart's seafood products are sourced by fisheries that use large-scale fishing methods such as pots and traps, purse seines, gillnets, pelagic trawls, bottom trawls, and longlines. [26] ¶ 35. These

methods harm marine life and ecosystems through bycatch, overfishing, and ghost gear. [26] ¶ 35. Bycatch is the unintentional hooking or ensnaring of marine life. [26] ¶ 36. Pollock trawl fisheries, for example, have contributed to the decline in the population of snow crabs in the Bering Sea because they utilize pelagic trawls (large conical nets that drag through the ocean to capture fish) and frequently catch snow crabs as bycatch. [26] ¶ 40. Snow crabs caught as bycatch are discarded and have a higher mortality rate. [26] ¶ 40. Because of the declining population, the snow crab harvest for 2022 was canceled. [26] ¶ 40. Overfishing is the removal of a species of fish from a body of water at a rate greater than the species can replenish its population. [26] ¶ 41. In Alaska, where much of Walmart's supply of wild-caught salmon comes from, overfishing has caused certain salmon populations to become depleted. [26] ¶ 43. Ghost gear is abandoned, lost, or discarded fishing gear. [26] ¶ 45. When ghost gear goes unmitigated, plastic remains in the ocean and impacts marine life populations. [26] ¶ 45. Lobsters and snow crabs are caught by fisheries that use pots and traps (cylindrical or rectangular cages typically made of plastic). [26] ¶ 48. Entanglement with the equipment can cause injury to and kill endangered species like the right whale. [26] ¶ 48.

Sanchez also alleges that Walmart's suppliers lack the transparency and traceability necessary to support its claim of sustainability. [26] ¶ 64. Traceability is "the ability to identify the origin of the product and sources of input materials" and "the ability to conduct backward and forward tracking using recorded information to determine the specific location and history of the product." [26] ¶ 66. Traceability

depends on third-party observers reporting unsustainable fishing practices. [26] ¶ 68. But observers used by Walmart's suppliers (who are MSC certified) fail to adequately report and record bycatch and other dangers or harms to marine wildlife. [26] ¶ 68. Plaintiff says that the underreporting of harmful practices and its impact on marine life leads to a lack of transparency that permits Walmart to "reap the benefits" while promising customers sustainably sourced products. [26] ¶ 71.

Sanchez brings state-law claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, eight other state consumer protection statutes,[6] and the Illinois Uniform Deceptive Trade Practices Act. [26] ¶¶ 140 n.149, 151–186. She also brings a claim for unjust enrichment.[7] [26] ¶¶ 187–194.

## III.   Analysis

### A.     Article III Standing

Plaintiffs in federal court must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A plaintiff

---

[6] Plaintiff brings claims under the following consumer protection statutes: California, Florida, Massachusetts, Michigan, Minnesota, New Jersey, New York, and Washington. [26] ¶ 140 n.149.

[7] The court has subject matter jurisdiction over the state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which creates federal jurisdiction if "(1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant; and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017). CAFA jurisdiction is satisfied because plaintiff alleges that the class includes more than 100 class members; minimal diversity is met because plaintiff is a citizen of Illinois and defendant is a citizen of Delaware and Arkansas; and the amount in controversy alleged exceeds $5,000,000. [26] ¶¶ 18, 21–22.

must demonstrate standing for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

### 1. Products Not Purchased

Sanchez's claims relate to eleven Walmart products, but she only alleges purchasing three of them: Pink Salmon Fillets, Pacific Cod Skinless Fillets, and Breaded Fish Sticks. [26] ¶¶ 2 n.1, 21. Plaintiff has no injury-in-fact caused by products that she did not buy, so she lacks standing with respect to those products. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 936 (7th Cir. 2021); *see also Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[A] person cannot predicate standing on injury which he does not share.") (quoting *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974)) (Burger, C.J., dissenting). Plaintiff points to a growing split within this district addressing the standing of a named plaintiff in a class-action suit based on products that they did not purchase that are substantially similar to the purchased products. *See Willard v. Tropicana Mfg. Co., Inc.*, 577 F.Supp.3d 814, 824 (N.D. Ill. 2021) (collecting cases). I have rejected the application of the substantial similarity test as a way for a named plaintiff to acquire standing. *See Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021). Others have found standing satisfied if there exists substantial similarity between the purchased and unpurchased products. *See, e.g.*, *Acosta-Aguayo v. Walgreen Co.*, No. 22-CV-00177, 2023 WL 2333300, at *3 (N.D. Ill. Mar. 2, 2023). I remain unpersuaded by the latter line of cases. Whether Sanchez may be an adequate class representative for absent class members injured by similar products is a

different question than the issue here. At this stage of the case, there is no class and plaintiff cannot bypass the "irreducible constitutional minimum" of Article III standing for her individual claim. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) ("That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.") (cleaned up). Plaintiff's claims relating to products that she did not purchase are dismissed without prejudice for lack of standing.[8]

2.    *Economic Injury in Fact*

An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Walmart argues that Sanchez's injury is not cognizable. [34] at 17. Sanchez alleges that she relied on the sustainability representations on Walmart's product packaging and that she would not have purchased the products or would have paid less for the products had she known the representations were untrue or misleading. [26] ¶ 21. Financial or economic injury is a basis for standing. *See In re Aqua Dots Prod. Liab. Litig.*, 654

---

[8] Plaintiff provides images of the Sam's Choice Wild Alaskan Sockeye Salmon product. [26] ¶ 33 nn.37–38. The back label contains text that is not present in the other product label images: "This premium Sockeye Salmon you are about to enjoy was sustainably harvested by independent fishing vessels from the pristine waters of Alaska's Bristol Bay, Cook Inlet, and Prince Williams Sound." [26] ¶ 33 n.38. Because Sanchez lacks standing for products that she did not purchase, I do not reach the question of whether this product (and others not included in the amended complaint) are substantially similar to the purchased products or whether the packaging is deceptive.

F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing."). Sanchez alleges concrete economic harm because she paid more for defendant's products than she otherwise would have paid (a "premium" price). This is sufficient to establish financial injury. She does not need to plead, as defendant argues, how much money she spent on the products, the availability and price of alternative products, or the premium amount she paid. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."); *Muir v. Playtex Prod., LLC*, 983 F.Supp.2d 980, 987 (N.D. Ill. 2013) (finding plaintiff's standing in a deceptive marketing case was established at the time of purchasing defendant's products "regardless of whether he later was dissatisfied with the [product] and regardless of whether he would have purchased a substitute product"). Walmart also argues that plaintiff's price premium allegation cannot be squared with its "low-price, price-match policy" and that its private-brand items are generally priced lower than comparable national-brand items. [34] at 17. While these facts may be relevant to the calculation of actual damages, they are not necessary to establish standing. *Cf. Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (suggesting that a plausible theory of actual damages under the ICFA could be based

14

on an allegation that a product is worth less than plaintiffs paid for it or that a better price could be obtained elsewhere).

Sanchez's alleged economic injury is sufficiently particularized. A particularized injury "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. Walmart contends that plaintiff fails to allege that she perceived "sustainable" as representing that certain fishing techniques were not used in sourcing the products she purchased. [34] at 16. Plaintiff states in her amended complaint that she believed the seafood products were sustainably sourced, meaning "they were sourced in a manner that would not harm the marine ecosystem and promote marine health." [26] ¶ 21. Sanchez sufficiently alleges how she was misled by defendant's product representations based on her understanding of sustainability, which includes sourcing from fisheries that do not engage in practices that are harmful to marine life. [26] ¶ 34. Defendant also contends that plaintiff lacks standing because she fails to allege that the three items she purchased were in fact sourced using objectional fishing methods. [34] at 16–17. Defendant cites to cases in which courts found a consumer's injury to be too speculative, but those cases involved allegations based on an uncertain number of products being defective. *See Wallace v. ConAgra Foods, Inc.,* 747 F.3d 1025, 1030 (8th Cir. 2014) (no injury in fact where plaintiff did not allege that the particular packages sold to consumers were "tainted by non-kosher beef" and it was unclear "whether even a bare majority of [the products] were not kosher"); *Renfro v. Champion Petfoods USA, Inc,* 25 F.4th 1293, 1305 (10th Cir. 2022) (no injury in fact where plaintiff only alleged that dog food was

at risk of contamination without alleging that purchased dog food was contaminated). Here, plaintiff alleges the harm is caused by defendant's labeling of the products, and the three purchased products all contain the allegedly deceptive labels. Her allegation is that the supplying fisheries for these products employ methods that are harmful to marine life and are therefore unsustainable, making the label (not the product inside) an injurious lie. Plaintiff adequately alleges a particularized injury in fact.

   *3. Prospective Injunctive Relief*

  To establish standing for injunctive relief, Sanchez must allege a "real and immediate" threat of future violations. *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Sanchez states that she would not have purchased Walmart's seafood products if she had known the truth about them. [26] ¶ 21. She is now aware of the true nature of Walmart's products and its marketing and is therefore unlikely to be harmed by defendant's practices in the future. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) ("Since [plaintiff] is now aware of [defendant's] sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by [defendant], [plaintiff] is not entitled to injunctive relief."). She also asserts that she seeks injunctive relief based on Walmart's "company-wide, pervasive, and continuous false advertising campaign." [38] at 18 (quoting *Le v. Kohls Department Stores, Inc.*, 160 F.Supp.3d

1096, 1110 (E.D. Wis. 2016)). Even if she knows the true nature of the products, she says other class members have a right to rely on Walmart's representations in the future. But plaintiff does not allege that she relied on anything other than Walmart's packaging labels when she made the decision to purchase the products. [26] ¶ 21. Here too, plaintiff fails to allege individual standing. Because her allegation of future harm is not real or immediate, plaintiff lacks standing to pursue injunctive relief.

### B.  Illinois Uniform Deceptive Trade Practices Act

Sanchez brings a claim under the Illinois Uniform Deceptive Trade Practices Act. [26] ¶¶ 165–176. The Act "enjoin[s]… trade practices which confuse or deceive the consumer." *Popp v. Cash Station, Inc.*, 244 Ill.App.3d 87, 98 (1st Dist. 1992). While it is generally invoked "to prohibit unfair competition and was not intended to be a consumer protection statute," a plaintiff may bring a consumer action suit under the statute. *Id*. The statute does not provide a cause of action for monetary damages, so a plaintiff is limited to seeking injunctive relief. *Greenberg v. United Airlines*, 206 Ill.App.3d 40, 46 (1st Dist. 1990). Claims for injunctive relief under the statute require an allegation of ongoing or future harm. *See Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill.App.3d 1, 9 (1st Dist. 2009) ("To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future."). "The problem in most consumer actions under the DTPA is the inability to allege facts indicating the likelihood of damage in the future." *Popp*, 244 Ill.App.3d at 99. Here too, plaintiff does not allege likelihood to be deceived or confused in the

17

future by defendant's products. Because plaintiff fails to state a claim upon which relief can be granted, the UDTPA claim is dismissed.

### C.     Illinois Consumer Fraud Act

The Illinois Consumer Fraud Act protects consumers "against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416–17. To state a claim under a deception theory, Sanchez must plausibly allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Id.* at 417. When evaluating a claim under an unfairness theory, a court considers: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Id.* at 417–18. Not all three criteria must be met to support a finding of unfairness. *Id.* at 418. While Sanchez alleges Walmart's conduct to be both deceptive and unfair, her amended complaint and response brief only address how defendant's conduct is deceptive or misleading. *See* [38] at 19–29. Defendant notes that "[plaintiff] does not parse which of her claims allege fraudulent versus non-fraudulent conduct" and "her allegations suggest that each claim is based on allegedly deceptive conduct." *See* [41] at 16 n.1. Because neither party substantively addresses the unfair conduct claim and plaintiff's claims sound in deception rather than unfairness, I consider only whether Walmart's conduct was deceptive. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("[A] party waives an argument by failing to

18

make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (internal citations omitted).

Plaintiff brings claims under the ICFA and various state consumer protection statutes,[9] all of which apply a reasonable consumer standard to deceptive marketing claims. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020). "A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false." *Beardsall,* 953 F.3d at 973.  A deceptive act "must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). "Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Bell*, 982 F.3d at 476.

Plaintiff takes issue with Walmart's "Sustainability Promise" to consumers, which includes a "multi-channel marketing campaign" in addition to the product-label representations. [26] ¶ 2. The "multi-channel marketing campaign" refers to statements made by Walmart's executives, in-store and in-club signage, authorized

---

[9] Plaintiff brings claims under the consumer protection statutes of eight other states: California, Florida, Massachusetts, Michigan, Minnesota, New Jersey, New York, and Washington. [26] ¶ 140 n.149. Defendant argues that plaintiff may not take a "laundry" list approach to stating a claim under other state statutes. [34] at 25.  State consumer protection statutes, known as "Little-FTC Acts," require a plaintiff to show likelihood of deception to a reasonable consumer—"[t]he core prohibitions of these laws are interpreted for the most part interchangeably." *Bell*, 982 F.3d at 475.

retailer websites, press tours, interviews, and press releases. [26] ¶ 4. Plaintiff's amended complaint includes many references to statements by Walmart representatives about its commitment to sustainability. *See, e.g.,* [26] ¶¶ 29–30, 67. She also refers to in-store and in-club signage for its marketing campaign on fresh and frozen seafood. [26] ¶ 78. Statements made by Walmart's executives, in-store/in-club signage, webpages, and the like that plaintiff alleges are a part of defendant's broader marketing campaign fall outside of the scope of actionable conduct. Plaintiff does not allege that she relied on these representations when purchasing defendant's seafood products. *See* [26] ¶ 21. Nor is there a plausible allegation that the reasonable consumer would rely on these outside statements or representations. The reasonable consumer standard looks at the totality of information available to the plaintiff. *See Davis*, 396 F.3d at 884. A reasonable consumer would not be familiar with or rely upon Walmart's press statements or interviews with company executives. A reasonable consumer could plausibly rely on in-store signage while perusing the shopping aisle and purchasing defendant's products, but plaintiff does not allege with the requisite specificity what these representations conveyed. *See* [26] ¶ 78.

But there are other representations on the product labels that a reasonable consumer might consider: the MSC Blue Tick certification, the "Sustainably Sourced – 100% – Sustainability" label, and the back-label text about Walmart's seafood sustainability commitment. Plaintiff contends that "sustainable" or "sustainably sourced" means the products "were sourced in a manner that would not harm the

marine ecosystem and promote marine health."[10] [26] ¶¶ 14, 21. Defendant argues that the ordinary meaning of "sustainable" refers to continuity of supply, and no reasonable consumer would understand it to be a guarantee about avoiding the use of certain fishing methods that may be harmful to marine life. [34] at 7–8. The Federal Trade Commission's Green Guides provide guidance on how reasonable consumers are likely to interpret certain environmental claims in marketing. *See* 16 C.F.R. § 260.1(c)–(d). But the FTC determined in 2012 that it lacked a basis to give specific guidance on how consumers interpret "sustainable" claims and declined to include it in the final guides.[11] *See* Guides for the Use of Environmental Marketing Claims, 77 Fed. Reg. 62122, 62124 (Oct. 11, 2012) (explaining areas not addressed by the final guides). Merriam-Webster's online dictionary provides three definitions, including "of, relating to, or being a method of harvesting or using a resource so that the resource is not depleted or permanently damaged." *Sustainable*, https://perma.cc/D8JE-3F4M (last visited May 13, 2024). The Oxford English

---

[10] Plaintiff also alleges that Walmart's sustainability representations are deceptive because its suppliers lack transparency and traceability to support a claim of sustainability. [26] ¶¶ 64–71, 80–91. She defines traceability as "the ability to identify the origin of the product and sources of input materials, as well as the ability to conduct backward and forward tracking using recorded information to determine the specific location and history of the product." [26] ¶ 66. But plaintiff does not allege that a reasonable consumer understands "sustainability" as meaning a commitment to transparency and traceability of seafood products. While transparency about a product's inputs and traceability of a product's supply chain help to monitor harmful fishing practices and therefore relate to sustainability efforts, Walmart makes no representations about a product's traceability and transparency on its packaging. *But see Wright v. Costco Wholesale Corp.*, 651 F.Supp.3d 1099, 1109 (N.D. Cal. 2023) (finding the statement "100% Traceable from Sea to Shelf" was actionable in the context of defendant's "dolphin-safe" representations on canned tuna product).

[11] In 2022, the FTC requested public comment on whether the Commission should revisit the determination and provide guidance on "sustainable" claims. *See* 87 Fed. Reg. 77766, 77769 (Dec. 20, 2022).

Dictionary lists three definitions, including "[c]apable of being maintained or continued at a certain rate or level." *Sustainable*, https://perma.cc/JMA5-WPBM (last visited May 13, 2024). The OED provides another definition: "Designating forms of human activity (esp. of an economic nature) in which environmental degradation is minimized, esp. by avoiding the long-term depletion of natural resources; of or relating to activity of this type. Also: designating a natural resource which is exploited in such a way as to avoid its long-term depletion." *Id.* The American Heritage Dictionary provides two definitions of sustainability: (1) "[c]apable of being sustained" and (2) "[c]apable of being continued with minimal long-term effect on the environment." *Sustainable*, https://perma.cc/5TBH-J9PV (last visited May 13, 2024). Consistent with defendant's interpretation, all of these definitions contain an element of continuity of supply. But plaintiff's interpretation of "sustainable" to include some minimization of harm to the resource or environment is also tenable. At least by some definitions (including the MSC's own definition of "sustainable seafood"), the concepts of continuity of supply and utilization of a resource in a way that avoids permanent or long-term damage go hand-in-hand. It would be unreasonable for a consumer to believe that harvesting results in no harm to the environment. After all, harvesting fish for consumption inevitably results in harm to the fish. But harm to a species or its environment can lead to depletion of a species' population that makes long-term exploitation unattainable. For example, plaintiff says fishing practices like pelagic trawls that are used by Walmart's suppliers result in discarded bycatch that lead to high mortality rates of fish. [26] ¶ 40. This fishing method is harmful to the fish, but

that harm is also tied to the ability of the species to replenish its population at a rate greater than consumption. [26] ¶ 41. Plaintiff also cites to a consumer perception study of the phrase "ecologically sustainable" that found a majority consumers "expect eco-labelled seafood to be harvested in a way that reduces impact on the fish population or the marine environment." [26] ¶ 28. While a reasonable consumer may not understand the granular details of various fishing practices, plaintiff sufficiently alleges that a reasonable consumer would expect seafood labeled as sustainable to be sourced from fisheries that use practices that avoid long-term depletion. *See Benson*, 944 F.3d at 647 ("[Plaintiff's] assertion that she and others attach importance to the size of a package is enough for now to indicate that a 'reasonable consumer' does so too.").

All three representations on the product labels invoke sustainability, but not all of them make the same promise. I evaluate the whole context of the packaging and the totality of information available to the consumer.

The "Blue Tick" representing third-party certification by the Marine Stewardship Council is prominent on the front and back labels of the products. The back label provides more information: "This product comes from a fishery that has been independently certified to the MSC's standard for a well-managed and sustainable fishery." [26] ¶ 33 n.35. Defendant argues that plaintiff's issues with the MSC standards, fisheries deviating from the standard, and MSC's certification process are not based on representations made by Walmart. [34] at 14. The Blue Tick conveys that the products were sourced from fisheries certified under the MSC

standard. [34] at 21. The FTC's Green Guides state that a "[t]hird-party certification does not eliminate a marketer's obligation to ensure that it has substantiation for all claims reasonably communicated by the certification." 16 C.F.R. § 260.6(c). And "[a] marketer's use of a name, logo, or seal of approval of a third-party certifier or organization may be an endorsement" subject to the Endorsement Guides. 16 C.F.R. § 260.6(b). The FTC's Endorsement Guides provide that endorsements "may not convey any express or implied representation that would be deceptive if made directly by the advertiser." 16 C.F.R. § 255.1. Here, though, the certification communicates only that the product meets MSC's standards for sustainability.

That statement is factually true, so it is not actionable as a deceptive or misleading statement by Walmart. *See Bohen v. ConAgra Brands, Inc.*, No. 23 C 1298, 2024 WL 1254128, at *7 (N.D. Ill. Mar. 25, 2024) ("The Blue Tick does exactly its purpose—the product is MSC-certified. That label is not a lie."); *see also Dwyer v. Allbirds, Inc.*, 598 F.Supp.3d 137, 150–51 (S.D.N.Y. 2022) (finding that defendant's use of a third party's environmental impact rating was not misleading where plaintiff's argument was "simply a critique of [the third party organization's] methodology"); *but see Dorris v. Danone Waters of Am.*, 2024 WL 112843, at *7 (S.D.N.Y. Jan. 10, 2024) (finding third-party certification was not clearly attributed to the third party, and even if it had that clear attribution, it still conveyed the independent and misleading term "carbon neutral"). Plaintiff takes issue with MSC's sustainability representation because it certifies fisheries that engage in unsustainable practices, but Walmart's representation remains true—the product

24

meets the Council's standards. Plaintiff fails to state a claim for deceptive conduct against Walmart based on the MSC certification label.

The back label contains text proclaiming Walmart's commitment to sourcing sustainable seafood, with a webpage link to its sustainability policy. Defendant says that this statement cannot be read independently of the MSC certification: Walmart's commitment to seafood sustainability means a commitment to third-party accreditation. [34] at 20. While each statement must be viewed in the context of the packaging as a whole, a reasonable consumer could view Walmart's seafood sustainability commitment as separate from the MSC certification. The statement about Walmart's "full seafood sustainability" commitment is bolded in all-caps text and directs the consumer to visit Walmart's (not MSC's) website. The MSC Blue Tick is below and slightly to the right of this statement and directs the consumer to MSC's website. It is plausible that a reasonable consumer would interpret Walmart's statement on sustainability as independent of the MSC certification. *See, e.g.*, *Rawson v. ALDI, Inc.*, No. 21-CV-2811, 2022 WL 1556395, at *2 (N.D. Ill. May 17, 2022) (finding that a reasonable consumer could fail to connect defendant's sustainability representation with a third-party certification where the labels were separated by color design, space on the package, and lacked other clarification of how the third-party certification related to defendant's sustainability representation). The link directs a consumer to Walmart's "Sustainability" webpage, which does not dispel an assumption that it is separate from MSC certification. *See* Walmart, *Sustainability*, https://perma.cc/3DCX-7CUJ (last visited May 13, 2024). Without

further context or clarification available, a reasonable consumer could view Walmart's statement as a separate representation.

One of the products, the Breaded Fish Sticks, contains the text "Sustainably Sourced – 100% – Sustainability" on the upper right corner. [26] ¶ 33 n.34. Product labels including a "100%" representation are commonplace in grocery store aisles, but these labels can be ambiguous depending on the context. *See, e.g., Bell*, 982 F.3d at 481 ("The problem lies in the '100%,' especially since the pleadings provide reason to think that consumers understand "100% grated cheese" to mean that the cheese does not have… additives."); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) (noting that the phrase "100% New Zealand Manuka Honey" could be interpreted as "a claim that the product was 100% Manuka honey, that its contents were 100% derived from the Manuka flower, or even that 100% of the honey was from New Zealand"). A reasonable consumer could interpret defendant's "Sustainably Sourced – 100% – Sustainability" representation as an affirmative promise that the seafood products were sourced exclusively from fisheries that passed MSC's certification standard. A reasonable consumer could also read the promise as independent of the MSC certification to mean that 100% of the practices used in harvesting the seafood was sustainable. The front-label stamp is placed on the top right of the packaging whereas the Blue Tick is on the bottom right corner. [26] ¶ 33 n.34. The two representations are separated by space, and no text otherwise suggests that the Blue Tick clarifies the 100% label. Given this context, a reasonable consumer could view the 100% label as an independent statement attributable to Walmart. At this stage

26

of the case, "[w]hat matters here is how consumers actually behave…[t]hese are matters of fact, subject to proof that can be tested at trial." *Bell*, 982 F.3d at 481. Plaintiff plausibly alleges that the "Sustainably Sourced – 100% – Sustainability" is deceptive, because the Breaded Fish Sticks were sourced by methods that did not avoid long-term depletion of or harm to marine life.

Defendant argues that any sustainability representations attributable to Walmart constitute puffery. Puffery encompasses "vague, highly subjective, or exaggerated commercial statements or advertisements" that are nonactionable. *Evolve Biosystems, Inc. v. Abbott Lab'ys*, No. 19 C 5859, 2022 WL 846900, at *5 (N.D. Ill. Mar. 22, 2022). Statements are not puffery if they make "objective" and verifiable claims and are "specific enough to induce consumer reliance." *Id.* (citation omitted). Walmart's "Sustainably Sourced – 100% – Sustainability" is specific and objective to the extent that it suggests some level of purity or perfection. *See Rawson*, 2022 WL 1556395 at *3 ("[Defendant's] sustainable label… attempts to connect its product to at least some environmental benefit. As a result, a reasonable inference can be made that [defendant's] label suggests, at a minimum, that its product is made in such a way that minimizes negative impact to the environment, which can be actionable as something beyond puffery"). But Walmart's back-label statement about its "seafood sustainability commitment" is cloaked in the type of vague and aspirational language that amounts to mere puffery. *See, e.g.*, *Myers v. Starbucks Corp.*, No. EDCV2000335CJCSHKX, 2020 WL 13302437, at *4 (C.D. Cal. July 29, 2020) (finding the claim, "[s]upports sustainably sourced cocoa through Cocoa Horizons," to be mere

27

puffery because of "aspirational language" on the product label like "promotes," "aims," and "supports"). The linked webpage offers nothing more specific and verifiable than what appears on the back label. It is littered with statements like, "[b]uilding on more than 15 years of sustainability leadership, we're on a path to becoming a regenerative company" or "[u]nderlining the ways our sustainability efforts prioritize people, we aim to source responsibly and promote human dignity." *See* Walmart, *Sustainability*, https://perma.cc/3DCX-7CUJ (last visited May 13, 2024). Walmart's back-label statement about its "sustainability commitment" is corporate blather about Walmart's aspirations. Perhaps it is Orwellian doublespeak obscuring the company's complicity in a looming environmental disaster, but it is not actionable under the Act.

Plaintiff does not sufficiently plead that the MSC Blue Tick or Walmart's "sustainability commitment" constitute deceptive conduct. But the "Sustainably Sourced – 100% – Sustainability" label is actionable as a deceptive statement.

### D. Unjust Enrichment

Sanchez also seeks restitution for unjust enrichment. [26] ¶¶ 187–94. Under Illinois law, unjust enrichment does not constitute an independent cause of action. *Flores v. Aon Corp.*, 2023 IL App (1st) 230140, ¶ 37. Instead, it is a "condition that may be brought about by unlawful or improper conduct… such as fraud." *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 137 Ill.App.3d 84, 90–91 (5th Dist. 1986). Plaintiff's request for relief based on unjust enrichment stands or falls with her ICFA claim. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir.

2011). Because plaintiff's ICFA claim survives, the request for restitution based on unjust enrichment survives as well.

## IV. Conclusion

Defendant's motion to dismiss, [33], is granted in part and denied in part. Plaintiff's claims related to products that she did not purchase, along with the request for prospective injunctive relief, are dismissed for lack of standing. The claims under the Illinois Consumer Fraud Act (Count I), other state consumer protection statutes (Count III), and for unjust enrichment (Count IV) survive in part. The claim brought under the Uniform Deceptive Trade Practices Act (Count II) is dismissed. All dismissals are without prejudice.[12]

ENTER:

Manish S. Shah
United States District Judge

Date: May 13, 2024

---

[12] A dismissal for lack of standing precludes a dismissal with prejudice. *See Flynn v. FCA US LLC*, 39 F.4th 946, 954 (7th Cir. 2022) ("When a district court concludes that the plaintiff lacks standing—and thus that the court lacks jurisdiction—the judge may either dismiss without leave to amend or dismiss without prejudice."). A dismissal for failure to state a claim is without prejudice to provide plaintiff with an opportunity to amend her complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily... a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").